THE CITY OF JACKSONVILLE, *et al.*, *Appellants*, v. J. E. T.
BOWDEN, *Appellee*.

Opinion Filed March 10, 1914.

1.  The lawmaking power of the legislature of a State is subject
    only to the limitations provided in the State and Federal
    Constitutions; and no duly enacted statute should be judi-
    cially declared to be inoperative on the ground that it violates
    organic law, unless it clearly appears beyond all reasonable
    doubt that under any rational view that may be taken of
    the statute, it is in positive conflict with some identified or
    designated provision of constitutional law.

2.  A statute should be so construed and applied as to make it
    valid and effective if its language does not exclude such an
    interpretation.

3.  Where a statute does not violate the Federal or State Con-
    stitution, the legislative will is supreme, and its policy is
    not subject to judicial review. The courts have no veto power
    and do not assume to regulate State policy; but they recog-
    nize and enforce the policy of the law as expressed in valid
    enactments, and decline to enforce statutes only when to do
    so would violate organic law.

4.  The constitution is the controlling law, and while, in appro-
    priate proceedings properly taken it may be the duty of the
    court to declare a legislative enactment to be inoperative in
    whole or in part, if it plainly violates the constitution, yet
    as under our system of government the lawmaking power of
    the legislature is subject only to the limitations contained in
    the State and Federal Constitutions, the court should, in
    deference to the legislature, take care to so interpret an
    enactment as to make it consistent with the constitution, if
    it can be done upon any reasonable consideration of the legis-
    lative intent as shown by a fair application of all the language
    used to the purpose designed to be accomplished by the
    enactment.

5. In conferring upon municipalities appropriate *quasi* legislative powers, for local governmental purposes, the legislature does not violate the implied principle of organic law that the legislature shall not delegate its general lawmaking power.

6. The express authority given to the legislature by the constitution to "prescribe" the "powers" of municipalities, and "to provide for their government," is not subject to *implied limitations* that would curtail the real intent and purpose of the authority expressly conferred as disclosed by a consideration of the language used and the subject matter upon which it operates.

7. While under the express authority "to provide for the government" of municipalities and to "prescribe their jurisdiction and powers and to alter or amend the same at any time," the legislature cannot delegate to a municipality its general lawmaking power for the State, nor confer a power that violates any other express provision of organic law, nor confer "powers" other than for municipal purposes, yet the legislature has a wide discretion in the government it may provide and in the powers it may prescribe for a municipality, and also in the means and instrumentalities it may use in providing the government and prescribing the powers, when organic law is not plainly violated.

8. A statute may be in whole or in part repealed or superseded or abrogated by implication of law as a result of the due enactment of a subsequent statute covering the same subject, or by the operation of a later statute upon the occurrence of a definitely specified contingent event.

9. If it is clear from its terms and purpose that the intent of a statute is that it shall supersede another statute upon a stated contingent event, the courts will give effect to such intent, when organic law is not thereby plainly violated, since the intent of the law is its vital force, and the province of the courts is to ascertain and efectuate the valid legislative purpose.

City of Jacksonville v. Bowden—Syllabus.

10. Neither the constitution nor the common law defines the line of separation between the powers that shall be exercised directly by the legislature and those that may be indirectly exercised through delegated authority conferred upon municipal governmental agencies.

11. Where the legislature has authority to provide a governmental regulation and the organic law does not prescribe the manner of adopting or providing it, and the nature of the regulation does not require that it be afforded by direct legislative act, such regulation may be provided either directly by the legislature, or indirectly by the legislative use of any appropriate instrumentality, where no provision or principle of organic law is thereby violated.

12. Uniformity is not required in the character and number or in the powers and duties of municipal officers; and it is entirely clear that the legislature may authorize a municipality to create and abolish its own municipal offices and to define and change their powers and duties.

13. Chapter 6705 Acts of 1913 confers a limited power upon the City of Jacksonville to regulate the character and number and the powers and duties of its administrative officers and boards for municipal purposes; and when that power is duly exercised within the limitations of the law, conflicting statutes are superseded by the force and operation of this statute in conferring the power upon the municipality and in expressly repealing all inconsistent statutory provisions.

14. Chapter 6705 Acts of 1913 is limited in its operation, is confined to municipal governmental regulations and is not beyond all reasonable doubt in conflict with the principle of organic law which forbids a delegation of the general lawmaking power of the State. Nor does the statute in effect authorize a municipality to repeal a State law.

Appeal from Circuit Court for Duval County; Daniel A. Simmons, Judge.

Order reversed.

*P. H. Odom,* for Appellants;

*Kay & Doggett,* for Appellee.

WHITFIELD, J.—This appeal is from an order restraining the City of Jacksonville and its officers from submitting to the voters of the city for adoption or rejection at an election called for October 28, 1913, certain ordinances that had been adopted by the city council under chapter 6705 Acts of 1913, and designed upon approval by the electors of the city to supersede portions of the city charter statutes. The suit is properly maintained by Bowden, a resident, citizen and taxpayer of the city. See Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963.

The statute which was in effect held by the chancellor to be inoperative is as follows:

"CHAPTER 6705—(No. 285.)

AN ACT Amending the Charter Affecting the Government, Powers, Duties, Jurisdiction, Officers, Boards and Elections of the City of Jacksonville, and extending and Enlarging the Powers of the Government of Said City, and Providing a Method Whereby the Charter of Said City May Be Hereafter Amended by Ordinance, Approved by the Electors of Said City, and to Repeal All Laws Inconsistent Herewith.

*Be it Enacted by the Legislature of the State of Florida:*

Section 1. That the numbers, powers, duties, terms of office and the time and manner of election or appointment of any and all boards and officers of the City of

Jacksonville, whether created by or recognized in State Legislation or City ordinance, excepting only the legislative powers and duties of the City Council, may be amended and changed, and any and all boards and officers whether created by or recornized in State Legislation or City ordinance, may be abolished and new boards and officers created, by ordinance adopted by the affirmative vote of a majority of all the members of the City Council, and approved by the Mayor or passed over his veto, and at a special municipal election approved by the affirmative vote of a majority of the qualified electors of said City who shall vote thereon in such special municipal election;

Provided, that the first such special municipal election shall be held on a date to be fixed by the City Council not less than three months and not more than six months after the passage and approval of this Act.

Provided, further, that such ordinance or ordinances shall be published in one or more newspapers published in said City not less than three times a week for eight weeks next preceding such special municipal election;

Provided, further, that the electors of said city shall be given an opportunity at such election or elections to vote separately upon each amendment to said charter, and upon the proposed change or changes as to each office to be affected thereby;

Provided, further, that this Act shall not deprive the City Council, under existing State legislation, of the power to create or abolish any office not created by or recognized in State legislation or by ordinance approved by the vote of the electors of said city.

Sec. 2.  That all laws or parts of laws inconsistent herewith are hereby repealed.

Sec. 3. This Act shall take effect immediately upon its passage and approval by the Governor.

Approved May 23rd, 1913."

The ordinance sought to be submitted to the electors for adoption or rejection is designed to transfer to the City Council some of the powers and duties now exercised by the Board of Bond Trustees of the city under legislative enactment, and to define the powers and duties of the mayor with reference to the police force of the city. It apparently follows the authority expressly given.

It is contended in support of the order appealed from that the statute above set out is unconstitutional because if it attempts to authorize the municipality to repeal certain statutes, and because it attempts to delegate to the municipality the legislative powers of the State in violation of Sections 1 and 24 of Article 3, and Section 8, Article 8 of the State Constitution.

The lawmaking power of the Legislature of a State is subject only to the limitations provided in the State and Federal Constitutions; and no duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that under any rational view that may be taken of the statute, it is in positive conflict with some identified or designated provision of constitutional law. See State v. Frear, 142 Wis. 320; 125 N. W. 961, 20 Ann. Cas. 633; Wooten v. State, 24 Fla. 335; County v. City of Jacksonville, 36 Fla. 196.

In construing a statute it must be assumed that in its passage the Legislature intended to conform to the requirements and limitations of organic law, and to provide a valid effective statute in accord with all the provisions of the Constituion affecting the subject.

Where one construction of a statute would render it unconstitutional and another construction that is fairly warranted by ts terms and purpose, would accord with organic law. the latter construction should be adopted, since legislation is subject to applicable limitations of the Constitution, and a valid statute is presumed to have been intended by the lawmaking power in its enactment. A statute should be so construed and applied as to make it valid and effective if its language does not exclude such an interpretation. See Peninsular Industrial Ins. Co.. v. State, 61 Fla. 376, 55 South. Rep. 398; the Abby Dodge, 223 U. S. 166, 32 Sup. Ct. Rep. 310; Attorney General of the United Sates v. Central R. Co. of New Jersey, 213 U. S. 366, 29 Sup. Ct. Rep. 527.

It is essentially the duty of the courts to sustain the Constitution, and to decline to enforce a statute when its enforcement would violate organic law; yet in exercising the exceedingly delicate and responsible power and duty to declare legislative enactments to be contrary to the Constitution, and therefore inoperative, the courts should, to maintain the judicial authority unsullied, be assiduous to keep entirely within their own organic limitations, and to refrain from declining to enforce statutes except in cases of clear and unmistakable violatons of the Constitution that require judicial action to give effect to the supreme law of the land on the subject, pursuant to the oath taken by all officials to "support * * * the Constitution."

In order to justify the courts in declaring inoperative as a delegation of legislative power, a statute conferring particular duties or authority upon administrative officers, it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a power that appertains exclusively to the legislative department, and

the conferring of it is not warranted under the provisions of the Constitution. In vesting the legislative power of the State in the Senate and House of Representatives, the Constitution by implication forbids the delegation by the Legislature of the general lawmaking power of the State to any other officers; but by immemorial usage based on public necessity this implication does not apply to the powers that may be conferred upon municipalities for local governmental purposes, and the terms of the present Constitution contemplate the giving of large and varied governmental powers to municipalities. Where a statute does not violate the Federal or State Constitution, the legislative will is supreme, and its policy is not subject to judicial review. The courts have no veto power and do not assume to regulate State policy; but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce statutes only when to do so would violate organic law. See State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639; Davis v. Fla. Power Co., 64 Fla. 246, 60 South Rep. 759; State v. Bryan, 50 Fla. 293, 39 South. Rep. 929; County Commr's. v. Pilot Comr's., 52 Fla. 197, 42 South. Rep. 697; State .v. Lane, —— Ala.——, 62 South. Rep. 31.

Statutes authorizing municipalities by stated procedure to change their corporate territory and limits as fixed by statute have been applied under the present Constitution of this State. See Sec. 172 *et seq.* Gen. Stats. of 1906; City of Orlando v. Orlando Water & Light Co., 50 Fla. 207, 39 South. Rep. 532; Town of Ormond v. Shaw, 50 Fla. 445, 39 South. Rep. 108.

Under the provisions of Section 5, Article IV of the Constitution "the Legislature may * * * provide for * * * a tax on licenses," a statute may authorize

a municipality to impose by ordinance license taxes, though such statute and the ordinances adopted under it and the licenses imposed may be inconsistent with other statutes covering the particular subject. Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Ferguson v. McDonald, decided at the last term.

The Constitution of the State contains the following:

Section 2. Declaration of Rights: "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the citizens, and they have the right to alter or amend the same whenever the public good may require it."

Sec. 24. Declaration of Rights: The "enunciation of rights" contained in the Constitution "shall not be construed to impair or deny others retained by the people."

Sec. 1, Article III. "The legislative authority of this State shall be vested in a Senate and House of Representatives."

Sec. 24, Article III. "The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith."

Sec. 20, Article III. "The Legislature shall not pass special or local laws * * * regulating the jurisdiction and the duties of any class of officers, except municipal officers; * * * regulating the practice of courts of justice, except municipal courts."

Sec. 8, Article VIII. "The Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors."

Whether the first sentence of Section 8, Article VIII above quoted is a declaration of the common law powers of the lawmaking body of a sovereign State or not, it is a specific definition in general and comprehensive terms of the powers of the Legislature with reference to municipalities.

At common law the legislative authority could empower a municipality to pass ordinances that had the force of law in their proper sphere; and this legislative authority is not curtailed by the provision of the Constitution vesting "the legislative authority of the State * * * in a Senate and House of Representatives."

In conferring upon municipalities appropriate quasi legislative powers for local governmental purposes, the legislature does not violate the implied principle of organic law that the Legislature shall not delegate its general lawmaking power. See State v. Atlantic Coast Line R. Co., 56 Fla. 617, text 634, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639; State v. Westmoreland, 133 La.——, 63 South. Rep. 502; Cooley on Const. Lim. (6th ed.), p. 138; McQuillon on Mun. Corp., paragraph 124; Stoutenburgh v. Hennick, 129 U. S. 141; 9 Sup. Ct. Rep. 256.

The section of the Constitution empowering the Legislature "to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time," does not prescribe the manner by which or the instrumentalities through which the Legislature in dealing with municipalities shall "provide for their government" or "prescribe their jurisdiction and powers." In the absence of organic direction or limitation, the Legislature may adopt any appropriate instrumentalities in discharging its duty "to provide for the government" of a municipality. Purely local regulations may

as legally and more conveniently be provided through municipal governments, and liberal use of municipalities for local governmental purposes is clearly contemplated by the quoted provisions of the Constitution.

The express authority given to the Legislature by the constitution to "prescribe" the "powers" of municipalities, and "to prpovide for their government," is not subject to *implied limitations* that would curtail the real intent and purpose of the authority expressly conferred as disclosed by a consideration of the language used and the subject matter upon which it operates.

While under the express authority "to provide for the government" of municipalities and to "prescribe their jurisdiction and powers and to alter or amend the same at any time," the Legislature cannot delegate to a municipality its general lawmaking power for the State, nor confer a power that violates any other express provision of organic law, nor confer "powers" other than for municipal purposes, yet the Legislature has a wide discretion in the government it may provide and in the powers it may prescribe for a municipality, and also in the means and instrumentalities it may use in providing the government and prescribing the powers, when organic law is not plainly violated. See Erickson v. City of Des Moines, 137 Iowa 452, 115 N. W. Rep. 177.

The exercise of the power conferred by the statute here considered does not change existing State laws or declare what the laws of the State shall be, except insofar as the law affects the particular municipality in its municipal affairs; and the specific and limited powers conferred by this particular statute upon the municipality cannot be said to be a delegation of the general lawmaking power of the Legislature in plain violation of the Constitution. Certainly by giving this limited authority

the Legislature has not lost its control over every municipal power. See Straw v. Harris, 54 Ore. 424, 103 Pac. Rep. 777; City of Chicago v. M. & M. Hotel Co., 248 Ill. 264, 94 N. E. Rep. 115. Under the Constitution the Legislature may "alter or amend the same at any time."

A statute may be in whole or in part repealed or superseded or abrogated by implication of law as a result of the due enactment of a subsequent statute covering the same subject, or by the operation of a later statute upon the occurrence of a definitely specified contingent event.

If it is clear from its terms and purpose that the intent of a statute is that it shall supersede another statute upon a stated contingent event, he courts will give effect to such intent, when organic law is not thereby plainly violated, since the intent of the law is its vital force, and the province of the courts is to ascertain and effectuate the valid legislative purpose.

The statute expressly provides "that all laws or parts of laws inconsistent herewith are hereby repealed." This repeal of conflicting charter powers becomes operative upon the taking of the specifically designated action by the municipality for municipal purposes under the limited authority expressly given by the statute. This is manifestly the legislative intent, and such intent is the vitality of the law. Thus the statute amends the charter powers of the city, but it does not repeal or suspend the operation of particular features of the charter acts except in the event that expressly authorized action is duly taken by the municipality that is in accord with this statute, but is in conflict with other charter acts. The authority conferred by the statute is for a municipal purpose and is within the powers that the Legislature could lawfully confer upon the muniecipality, viz.: the creation, change and duty of municipal officers and boards, the

legislative powers and duties of the city council being expressly excluded.

Neither the Constitution nor the common law defines the line of separation between the powers that shall be exercised directly by the Legislature and those that may be indirectly exercised through delegated authority conferred upon municipal governmental agencies. Where the Legislature has authority to provide a governmental regulation, and the organic law does not prescribe the manner of adopting or providing it, and the nature of the regulation does not require that it be afforded by direct legislative act, such regulation may be provided either directly by the legislative, or indirectly by the legislative use of any appropriate instrumentality, where no provision or principle of organic law is thereby violated. If this rule is not recognized, many useful governmental regulations may be practically unattainable to the detriment of the public, when in the language of the Constitution the "government is instituted for the protection, security and benefit of the citizens." This salutary principle is observed with reference to administrative boards and officers, and it is specifically applicable to powers that may be conferred upon municipalities for local governmental purposes. Such a principle is particularly useful in our system where the Constitution in fixing the status and powers of municipalities expressly authorizes the Legislature "to provide for their government" and "to prescribe their jurisdiction and powers, and to alter or amend the same at any time," by "local or special laws" to meet the inherently varied local conditions and requirements that are particular to this State, in the interest of the public welfare.

The Constitution expressly provides the manner in which statutes shall be enacted by the Legislature itself;

13—Vol. 67.

but in providing for legislative control of municipalities the Constitution ordains in general terms that the Legislature shall prescribe the "jurisdiction and powers" of municipalities and "provide for their government." While the Legislature may itself enact all the laws required by a municipality, it certainly may delegate to the municipality power to enact ordinances not in conflict with the Constitution that have the force of law within their proper sphere. In its discretion the Legislature may by its own direct enactment or through the agency of municipal ordinances and regulations, prescribe and provide for the "numbers, powers, duties, terms of office and the time and manner of election or appointment of any or all boards and officers of the City of Jacksonville;" and the Legislature may itself provide how any and all boards and officers of the city may be abolished and new boards and officers created, or it may delegate this power to the municipality or its electors without violating the organic law of the land. This being so, the fact that some of these regulations may be already directly prescribed *by statute* does not deprive the Legislature of the right to alter or amend them; and it may do so through the medium of the municipality by express authority duly given where no provision of the Constitution is thereby plainly violated. By authorizing the municipality to adopt regulations pertaining to the creation and abolishment and powers and duties of municipal officers and boards, that are in conflict with existing statutes, the Legislature in effect expressly authorized municipal action within its province; and when that authorized municipal action is duly taken the existing statutory regulations in conflict therewith are *by force of the statute giving the authority,* suspended or abrogated. This does not in reality amount to the repeal of a statute by

municipal action; but the operation of a statute upon a particular subject may be suspended *by the force and effect of another statute* authorizing conflicting municipal action to be taken for a municipal purpose in accordance with express legislative authority given to that end.

Uniformity is not required in the character and number or in the powers and duties of municipal officers; and it is entirely clear that the Legislature may authorize a municipality to create and abolish its own municipal offices and to define and change the powers and duties of its municipal officers. If the subject is already covered by the statute, the Legislature may abrogate the statute and confer the stated authority upon the municipality. If the conflicting statutes are abrogated by force and operation of the statute conferring upon the municipality the power to create and regulate its own officers and boards, there is no obstacle to the exercise of the authority by the municipality. Such is the situation here. The statute complained of confers a limited power upon the municipality to regulate the character and number and the powers and duties of its administrative officers and boards for municipal purposes; and when that power is duly exercised within the limitations of the law, the conflicting statutes are superseded by the force and operation of the statute in conferring the power upon the municipality and in expressly repealing all inconsistent statutory provisions.

The statute here involved is limited in its operation, is confined to municipal governmental regulations and is not beyond all reasonable doubt in conflict with the principle of organic law which forbids a delegation of the general lawmaking power of the State. Nor does the statute in effect authorize a municipality to repeal a State law. See Munn v. Finger, decided at the last

term; City of Yazoo City v. Lightcap, 82 Miss. 148, 33 South. Rep. 949; Dobbin v. City of San Antonio, 2 Tex. Unrep. Cas. 708; Village of St. Johnsbury v. Thompson, 59 Vt. 300, 9 Atl. Rep. 571; San Louis Obisoo, City of, v. Fitzgerald, 126 Cal. 279, 58 Pac. Rep. 699; Bearden v. City of Madison, 73 Ga. 184; 28 Cyc. 365 *et seq.*; McQuillin on Mun. Corp., paragraphs 643, 843; Plinkiewisch v. Portland Ry. L. & P. Co., 58 Ore. 499, 115 Pac. Rep. 151; Smith on Mun. Corp., paragraph 106; Dillon on Mun. Corp., 69, 573.

The Constitution is the controlling law, and while, in appropriate proceeding properly taken, it may be the duty of the court to declare a legislative enactment to be inoperative in whole or in part, if it plainly violates the Constitution, yet as under our system of government the lawmaking power of the Legislature is subject only to the limitations contained in the State and Federal Constitutions, the court should, in deference to the Legislature, take care to so interpret an enactment as to make it consistent with the Constitution, if it can be done upon any reasonable consideration of the legislative intent as shown by a fair application of all the language used to the purpose designed to be accomplished by the enactment.

In State v. Dillon, 42 Fla. 95, 28 South. Rep. 781, the portion of the ordinance condemned was in direct conflict with the prior statute on the subject and not authorized by the later statute. Here the ordinance apparently accords with the statue authorizing its adoption.

In the case of State *ex rel.*, Mueller v. Thompson, 149 Wis. 488, 137 N. W. Rep. 20; Dexhaimer v. City of Orange, 60 N. J. L. 111, 36 Atl. Rep. 706; Elliott v. City of Detroit, 121 Mich. 611, 84 N. W. Rep. 820, and other

cases holding such authority to be a delegation of the law-making power in violation of organic law, the decisions were apparently controlled by the restrictive provisions of the Constitution or by the unrestricted nature of the authority conferred.  In this State uniformity of municipal government is not required, and the Legislature has plenary powers in the premises.  The ordinance is apparently in substantial accord with the statute and it is not clearly void for uncertainty.  The statute is not affected by the restraining of the first election thereunder at the time required by the act.  See State *ex rel.*, Law v. Saxon, 25 Fla. 792, 6 South. Rep. 858.  The discussion herein has reference to the paricular statute as applied to a municipality under the present Constitution of this State.

The restraining order appealed from is reversed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL & HOCKER, J. J., concur.